## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| Z'IONTAE WOMACK, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 19-2446-KHV |
| | ) | |
| UNIFIED GOVERNMENT OF WYANDOTTE | ) | |
| COUNTY / KANSAS CITY, KANSAS, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Z'iontae Womack filed suit against the Unified Government of Wyandotte County / Kansas City, Kansas ("Unified Government") alleging that it discriminated against her on the basis of race and maintained a racially hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. Pretrial Order (Doc. #38) filed February 19, 2021 at 13. This matter is before the Court on cross-motions for summary judgment: Plaintiff's Motion For Partial Summary Judgment (Doc. #40) filed March 10, 2021 and Defendant's Motion For Summary Judgment (Doc. #44) filed March 24, 2021. For reasons stated below, the Court overrules plaintiff's motion and sustains defendant's motion in part.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735,

740 (10th Cir. 2007).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Liberty Lobby, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).  Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).  To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence.  Nahno-Lopez, 625 F.3d at 1283.

The Court views the record in the light most favorable to the nonmoving party.  See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative.  See Liberty Lobby, 477 U.S. at 250–51.  In response to a motion for summary judgment, a party cannot rely on ignorance of facts, speculation or suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988); Olympic Club v. Those Interested Underwriters At Lloyd's London, 991 F.2d 497, 503 (9th Cir. 1993).  The heart of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Liberty Lobby, 477 U.S. at 251–52.

**Factual Background**

The following facts are undisputed or deemed admitted.

Plaintiff is an African-American female.  Since 2007, the Kansas City, Kansas Police Department ("KCKPD"), a department of the Unified Government, has employed her as a police officer.

## I.      KCKPD Rules and Regulations

The KCKPD requires sworn officers to follow various rules and regulations.  KCKPD rules classify violations as either major or minor and officers receive disciplinary points for each.  Points are a form of progressive discipline and officers receive increasingly severe punishment. Supervisors may suspend officers up to four days without pay for a minor violation.  Unless an officer accumulates more than 40 points in a one-year period, an officer typically does not receive a suspension for a minor violation.  After 40 points, the KCKPD classifies a violation as major. Supervisors have discretion to impose discipline, including termination of employment, for major violations.  The department directs supervisors to consider an employee's history including prior offenses and effectiveness of past discipline.  Supervisors typically use a suspension as a punishment when an officer has not responded to less severe discipline.

## II.     Sleeping on Duty

KCKPD Rule 2.52 provides that sleeping on duty is a minor violation and results in 25 disciplinary points.  On September 22, 2016, plaintiff's supervisor found her asleep with a blanket and pillow in the passenger seat of a police car in front of the police station.  On September 29, 2016, Sergeant Keith Falkner, a white male, gave plaintiff a letter of discipline and 25 disciplinary points.  Plaintiff also received a one-day suspension because, including this incident, she had accumulated more than 40 disciplinary points in a one-year period.  Plaintiff did

not feel that race motivated this discipline.

On November 27, 2016, Sergeant Falkner again saw plaintiff sleeping on duty in her patrol car at the police station. Chief Terry Zeigler gave plaintiff 50 disciplinary points for this violation. Because plaintiff now had two violations in the last year and had accumulated 75 points, Chief Zeigler issued a two-day suspension. Chief Zeigler also suspended plaintiff's approval for off-duty employment for six months. At the time, because department policy provided a system of progressive discipline, plaintiff did not feel that race motivated this sanction.

On January 5, 2017, plaintiff told a supervisor that Sergeant Falkner was sleeping on duty. As a result, he received 25 disciplinary points. On December 23, 2017, another sergeant found plaintiff sleeping in her car while on duty. On January 16, 2018, Chief Zeigler suspended plaintiff for four days and prohibited her from working at an off-duty job for 12 months. Chief Zeigler warned plaintiff that a further violation in the next 25 months would result in disciplinary action, up to and including termination of employment. Plaintiff felt that this discipline was excessive and based on race. Further, plaintiff felt that Chief Zeigler had possibly disciplined her because of her involvement in the Major Young incident.

### III.   Major Young Incident

On February 4, 2017, Major Solomon Young, an African-American commander in the KCKPD, was driving an unmarked patrol car and followed plaintiff and her partner in their marked car. Plaintiff was driving, and noticed that the unmarked car was following her. Plaintiff tried to get away by running a red light and speeding, without using her emergency equipment. Plaintiff realized that Major Young was the driver when he turned on his lights and pulled her over. Plaintiff's partner later told plaintiff that he believed Major Young was intoxicated. A few days later, Major Young gave plaintiff a one-day suspension for running the light and speeding without

her emergency equipment.

On February 13, 2017, plaintiff complained to the Unified Government Human Resources Department about this discipline.  A Unified Government representative referred plaintiff back to the KCKPD.  KCKPD Internal Affairs investigated and found policy violations that resulted in Major Young's resignation.  Chief Zeigler also disciplined a captain and two sergeants, all of whom are white, for their failure to investigate the incident.

On April 24, 2017, Chief Zeigler suspended plaintiff for two days for violating General Order 40.03, which prohibits running red lights and speeding in a patrol car that is not operating as an emergency vehicle.  Chief Zeigler also gave plaintiff a one-day suspension for violating General Order 20.01, which requires employees to report complaints to the Bureau Director rather than the Unified Government HR Department.  Plaintiff and her partner both decided that plaintiff should run the red light to escape Major Young's vehicle.  Even so, defendant did not discipline plaintiff's partner, who is white.

In 2008, a former police chief disciplined two officers for violating a pursuit policy while operating a patrol car.  The officer who was riding in the passenger seat was African-American and received a one-day suspension for violating Rule 3.22, which requires officers to maintain competence in the performance of their duties.  The officer who was driving was also African-American.  That officer received a four-day suspension for violating the pursuit policy and failing to operate a police car in such a manner as to avoid serious structural or mechanical damage to the vehicle.  The discipline in the 2008 incident was a negotiated settlement between the KCKPD and the police officer's union.

## IV.     Reassignment To South Patrol

In 2017, defendant temporarily reassigned plaintiff from West Patrol to South Patrol. KCKPD policy permits temporary reassignments for up to 59 days when it needs additional or substitute employees to perform certain duties.  Plaintiff felt that South Patrol was less desirable because she did not know that area very well, and that defendant knew as much. Defendant did not give plaintiff a reason for the reassignment and she never asked for one.  Plaintiff thought that defendant may have reassigned her as punishment for reporting that Sergeant Falkner was sleeping on duty.  Plaintiff also felt that defendant was monitoring her more closely than other patrol officers and she reported that officers made racially offensive comments during roll call.

## V.     Sergeant Mobile Training And Community Policing Unit Requirements

In March of 2018, many acting KCKPD sergeants attended training on how to grade and approve reports using new software.  Even though plaintiff had served as acting sergeant several times during the spring of 2018, the department did not permit her to attend.  It selected attendees for whom the class would be relevant to their job duties.  Plaintiff did not have permission to use the software to approve reports, so the training was not relevant to her regular duties.  Whether an officer attended the training did not affect his or her chance of promotion.

Plaintiff applied to the Community Policing Unit several times, but she did not qualify for promotion because she did not meet seniority requirements.[1]  During his tenure as chief, Chief Zeigler had raised the eligibility standards for the Community Policing Unit.[2]  Defendant states

---

[1]     The record does not set forth the seniority requirement, but only states that plaintiff did not meet it.

[2]     In part, the new standards required a certain level number of "sevens" on performance evaluations.  Defendant argues it required a certain number of "sevens" to incentivize

(continued . . . )

that the purpose of the seniority requirement was to ensure that good performers staffed the specialized units.  Plaintiff felt that Chief Zeigler changed the evaluation requirement, but kept the seniority requirement, to prevent officers of color and women from qualifying for the unit.

## VI.   Kansas Human Rights Commission And EEOC

On April 2, 2018, plaintiff filed a charge of discrimination with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC").  The EEOC handled the charge.  Plaintiff alleged that in 2017, because of race and sex, defendant monitored her more closely and gave her worse job duties than other employees, and reprimanded her by suspensions and letters of discipline. On May 6, 2019, the EEOC dismissed the charge and issued a notice of right to sue.

## VII.   Human Resources Investigation

In June and December of 2018, plaintiff reported on her semi-annual personnel evaluation that in the prior year, she had been the victim of harassment, discrimination or coercion.  Plaintiff stated that she felt that Chief Zeigler gave her excessive discipline because of her role in the Major Young case, her race and her sex.  Defendant forwarded the complaint for investigation by Human Resources ("HR") and the County Administrator Office.  An HR employee interviewed plaintiff. Plaintiff explained that black and female officers received a disproportionate amount of discipline and more severe discipline than white male officers, that Chief Zeigler disciplined her in retaliation

---

[2] (. . . continued)
good performance by tying assignments to specialized units to performance evaluation scores. Plaintiff's performance reviews praised her work performance and from 2016 to 2018, defendant awarded plaintiff multiple "sevens" and "eights."  The record does not indicate whether plaintiff meets the performance eligibility standards, but she does not claim that her performance rating rendered her ineligible for the Community Policing Unit.  Accordingly, the gravamen of her complaint is the seniority requirement—the substance of which is not clear.

for her involvement in the Major Young incident, that Chief Zeigler issued her excessive discipline for sleeping on duty and that she received unfair performance evaluations which prevented her from receiving promotions.  HR concluded that plaintiff had a history of violating rules and general orders, that previous police chiefs were primarily responsible for the disciplinary action in question and that her allegations of disparate discipline were unsubstantiated.  HR forwarded the report to the County Administrator.

## VIII. Statistical Evidence of Discipline Involving African-Americans

Plaintiff argues that Chief Zeigler disproportionately disciplined African-American officers.  Plaintiff presents the following statistical evidence in support of that claim:

From 2016 to 2020, African-Americans comprised 10 to 12 per cent of the KCKPD police force.

From 2014 to 2019, while Chief Zeigler was chief of police, the department issued 190 instances of discipline, and 21.05 per cent of the discipline was issued to African-Americans.

From 2014 to 2019, Chief Zeigler gave 753 days of suspension.  African-American officers received 198 days (or 26.29 per cent of all the days of suspension).

From 2014 to 2019, defendant terminated the employment of nine officers.  Four of the officers terminated (or 44.44 per cent) were African-American.

Of the four officers disciplined for being AWOL, one was African-American and received 25 per cent of the days of suspension for the violation.

Of the nine officers disciplined for violating the general order on the code of ethics, three were African-American.  The three African-American officers received 38.46 per cent of the total days of suspension given to the nine officers.

Of the 20 officers disciplined for not showing required competence, five were African-American.  The five African-American officers received 38.05 per cent of the total days of suspension given to the 20 officers.

Of the seven officers disciplined for violating the general order on detention and arrest procedure, one was African-American.  The African-American officer received 16.66 per cent of the total days of suspension given to the seven officers.

Of the three officers disciplined for dishonesty, one was African-American.  The African-American officer received 50 per cent of the total days of suspension given to the three officers.

Of the seven officers disciplined for domestic violence, two were African-American.  The two African-American officers received 28.57 per cent of the total days of suspension given to the seven officers.

Of the five officers disciplined for failing to appear in court, one was African-American.  The African-American officer received 20 per cent of the total days of suspension given to the five officers.

Of the 43 officers disciplined for pursuit policy violations, nine were African-American.  The nine African-American officers received 12.75 per cent of the total suspension days given to the 43 officers.

Of the eight instances in which officers were disciplined for sleeping on the job, six of the officers were African-American.

Of the 198 suspensions issued to African-Americans, four officers received most of the days.  Those four officers received 130 of the 198 suspension days.  In 2014, one officer received 30 of the 31 suspension days issued to African-American officers.  In 2015, one officer received 40 of the 51 suspension days issued to African-American officers.  In 2016, one officer received 30 of the 48 suspension days issued to African-American officers.  In 2018, one officer received 30 of the 48 suspension days issued to African-American officers.

## IX.   Lawsuit

On August 2, 2019, plaintiff filed suit against the Unified Government, alleging that it discriminated against her on the basis of race and maintained a racially hostile work environment in violation of Title VII and 42 U.S.C. § 1981.  Plaintiff alleges that because of race (1) Chief Zeigler suspended her for two days for running a red light and one day for not raising her complaint about the incident to the Bureau Director, (2) Chief Zeigler suspended her for one day and issued 25 disciplinary points for her first instance of sleeping on duty, (3) Chief Zeigler suspended her

for two days and issued 50 disciplinary points for her second instance of sleeping on duty, (4) Chief Zeigler suspended her for four days and prohibited her from working off-duty employment for 12 months for her third instance of sleeping on duty, (5) defendant did not select plaintiff to participate in Sergeant Mobile Training, (6) defendant monitored plaintiff more closely than white officers and temporarily reassigned her to South Patrol and (7) Chief Zeigler changed the qualifications for positions in the Community Policing Unit.  Plaintiff also asserts a racially hostile work environment claim.

## <u>Analysis</u>

Defendant seeks summary judgment on all claims.  Defendant asserts that it is entitled to summary judgment because (1) plaintiff failed to exhaust administrative remedies under Title VII on claims arising from the Major Young incident, the Community Policing Unit requirements and the first and second sleeping incidents; (2) except for the suspensions, defendant did not take any adverse employment action against plaintiff; and (3) defendant acted for legitimate, non-discriminatory reasons.  Defendant also argues that it is entitled to summary judgment on plaintiff's hostile work environment claim because (1) plaintiff did not exhaust administrative remedies under Title VII and (2) plaintiff cannot establish a prima facie case.

Plaintiff seeks partial summary judgment on her race discrimination claim and argues that other than race discrimination in violation of Title VII and Section 1981, defendant has no plausible explanation for racially disparate discipline which it has levied against her.[3]

---

[3]     Plaintiff does not seek summary judgment on her hostile work environment claim.

## I.      Exhaustion Of Plaintiff's Title VII Claims

Defendant asserts that plaintiff's Title VII claims arising from the Major Young incident, the Community Policing Unit Requirements and the first and second sleeping incidents are time-barred because they occurred more than 300 days before April 2, 2018, the date when plaintiff filed her EEOC charge.[4]

### A.      Disparate Treatment Race Discrimination Under Title VII

Under Title VII, plaintiff must base her disparate treatment claims on discrete acts.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002); Payan v. U.P.S. Inc., 905 F.3d 1162, 1168 (10th Cir. 2018).  If plaintiff fails to timely file an EEOC charge regarding each discrete employment incident or adverse action, defendant may raise an affirmative defense of failure to exhaust.  Lincoln v. BNSF Ry. Co., 900 F.3d 1166, 1185 (10th Cir. 2018).  To exhaust, plaintiff generally must present her claims to the EEOC or authorized state agency (here, the KHRC) and receive a right-to-sue letter based on that charge.  Id. at 1181.  In Kansas, plaintiff must file an administrative charge within 300 days of the alleged discriminatory action.  See 42 U.S.C. § 2000e-5(e)(1).  The charge "shall be in writing and signed and shall be verified," 29 C.F.R. § 1601.9, and must at a minimum identify the parties and "describe generally the action or practices complained of," 29 C.F.R. § 1601.12(b).  A discrimination charge is liberally construed but is limited to the scope of investigation that can reasonably be expected to follow the charge of discrimination submitted.  Jones v. U.P.S., Inc., 502 F.3d 1176, 1186 (10th Cir. 2007).  The charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim.

---

[4]      Section 1981 does not contain an administrative exhaustion requirement.  Martin v. Central States Emblems, Inc., 150 F. App'x 852, 857 (10th Cir. 2005) ("Unlike Title VII claims, § 1981 claims can be commenced without exhaustion of administrative remedies.").

Id.  The charge tells the EEOC or KHRC what to investigate, provides the opportunity to conciliate the claim and gives the charged party notice of the alleged violation.  See Martinez v. Potter, 347 F.3d 1208, 1211 (10th Cir. 2003).  The timeliness requirement is like a statute of limitations, i.e. subject to waiver, estoppel and equitable tolling.  Zipes v. Trans World Airlines, 455 U.S. 385, 393 (1982).

Here, plaintiff filed her EEOC and KHRC charges on April 2, 2018.  As a matter of law, any claim of disparate treatment that occurred before June 6, 2017 (i.e., 300 days before plaintiff filed her charges) is therefore time-barred.  See Morgan, 536 U.S. at 113 (each discrete discriminatory act starts new clock for filing charges alleging that specific act).  The employee need only be on notice of the adverse decision, not the alleged discriminatory motivation, for the 300-day period to begin.  Daniels v. U.P.S., Inc., 701 F.3d 620, 628 (10th Cir. 2012).

### 1.  Major Young Incident

On April 24, 2017, Chief Zeigler gave plaintiff a letter of discipline regarding the Major Young incident.  Even though plaintiff did not file her EEOC and KHRC charges until April 2, 2018, plaintiff argues that the Major Young Incident is within the scope of the administrative investigation that could reasonably be expected to follow the charge.  Plaintiff was on notice of the adverse decision on April 24, 2017, however, which is outside the 300-day window.  Therefore, plaintiff did not file her discrimination charge regarding the Major Young incident within the requisite period and cannot sue under Title VII.

### 2.  Community Policing Unit Requirements

Plaintiff alleges that in 2018, because of her race, Chief Zeigler changed the personnel evaluation requirement and kept the seniority requirement for positions in the Community Policing Unit.  Plaintiff filed her EEOC and KHRC charges within 300 days of Chief Zeigler's actions, but

her charge does not include any allegations related to this subject.  While charges of discrimination are liberally construed, plaintiff's EEOC and KHRC charges do not mention the Community Policing Unit or defendant's use of qualifications to exclude certain applicants.  Moreover, plaintiff has not explained how the scope of the EEOC or KHRC investigations could reasonably be expected to include an investigation of qualifications for positions in the Community Policing Unit.  Because plaintiff has not shown that she exhausted administrative remedies on defendant's qualifications for the Community Policing Unit, the Court sustains defendant's motion for summary judgment as to plaintiff's Title VII disparate treatment claim based on these qualifications.

### 3.   First and Second Sleeping Incidents

Plaintiff alleges that because of race, defendant disciplined her more harshly for her first and second violations for sleeping on duty.  On September 29 and December 1, 2016, Chief Zeigler gave plaintiff letters of discipline for sleeping on duty.  Plaintiff was on notice of the adverse decisions prior to the 300-day window preceding the date of her EEOC and KHRC charges. Plaintiff did not file the charge regarding the two sleeping incidents within the requisite window. The Court therefore sustains defendant's motion for summary judgment as to plaintiff's Title VII disparate treatment claim based on these incidents.

### B.   Hostile Work Environment Under Title VII

As with claims for disparate treatment, plaintiff must file a hostile work environment claim under Title VII within 300 days of the unlawful employment practice.  But unlike disparate treatment and retaliation, a hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice."  42 U.S.C. § 2000e-5(e)(1).

-13-

To determine liability, if an act that contributes to the claim occurs within the filing period, the Court may consider the entire time period of the hostile environment.  Morgan, 536 U.S. at 117.

Defendant argues that plaintiff's EEOC and KHRC charges do not complain of racial harassment or a racially hostile work environment.  The charge alleges, however, that beginning in January of 2017, defendant discriminated against her on the basis of race.  Because plaintiff's hostile work environment claim includes several events that occurred within the filing period (i.e., after June 6, 2017), the Court may consider events that contribute to the hostile work environment even if they fall outside the 300-day period.   Defendant is not entitled to summary judgment on the theory that plaintiff failed to exhaust administrative remedies on her hostile work environment claim.

## II.     Disparate Treatment Under Title VII And Section 1981

Plaintiff asserts that defendant discriminated against her based on race in violation of Title VII and 42 U.S.C. § 1981.[5]  Plaintiff alleges disparate treatment for the following adverse employment action: (1) denying her Sergeant Mobile Training; (2) reassigning her to South Patrol; (3) closely monitoring her; (4) changing the qualifications for Community Policing Units; (5) disciplining her for the first and second sleeping incidents; (6) disciplining her for the third sleeping incident; and (7) disciplining her for the Major Young incident.[6]

---

[5]      The Court analyzes plaintiff's disparate treatment and hostile work environment claims under Title VII because the standards are the same for both Title VII and Section 1981.  Crowe v. ADT Sec. Serv., Inc., 649 F.3d 1189, 1194 (10th Cir. 2011).

[6]      Because plaintiff has not exhausted administrative remedies for the Major Young incident, the Community Policing Unit requirements or the first two sleeping incidents, those claims can only be brought under Section 1981.  Martin v. Central States Emblems, Inc., 150 F. App'x 852, 857 (10th Cir. 2005) ("Unlike Title VII claims, § 1981 claims can be commenced without exhaustion of administrative remedies.").  The remaining claims—denying plaintiff

(continued . . .)

-14-

Plaintiff relies on the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Plaintiff bears the initial burden to establish a prima facie case. To establish a prima facie case of discrimination, she must demonstrate that (1) she belongs to a protected class; (2) she suffered adverse employment action; and (3) the challenged action took place under circumstances which give rise to an inference of discrimination. Bird v. Regents of New Mexico State Univ., 619 F. App'x 733, 741 (10th Cir. 2015); Hysten v. Burlington N. & Santa Fe Ry. Co., 296 F.3d 1177, 1181 (10th Cir. 2002). If plaintiff sets forth a prima facie case, the burden shifts to defendant to provide a legitimate, nondiscriminatory reason for the action. McDonnell Douglas, 411 U.S. at 802. If defendant successfully does so, the burden shifts back to plaintiff to show that defendant's stated reason is a pretext for discriminatory intent. Id. at 804.

Defendant does not dispute that plaintiff belongs to a protected class or that the challenged action took place under circumstances which give rise to an inference of discrimination. Defendant argues, however, that except for the four incidents of discipline, she cannot establish adverse employment action. In other words, defendant insists that as a matter of law, it did not adversely impact plaintiff's employment by denying her Sergeant Mobile training, assigning her to South Patrol, closely monitoring her or changing the qualifications for the Community Policing Unit. As to the discipline-based claims for sleeping and the Major Young incident, defendant argues that plaintiff has not presented sufficient evidence that its legitimate, non-discriminatory reasons for discipline are pretextual. As to the Community Policing Unit, defendant argues that it had legitimate, non-discriminatory reasons for changing its eligibility standards.

---

[6](. . . continued)
Sergeant Mobile training, reassigning plaintiff to South Patrol, closely monitoring plaintiff and the third sleeping incident—can be brought under both Title VII and Section 1981.

A.  Prima Facie Case – Adverse Employment Action

In determining whether an employer's activity constitutes adverse employment action, the Court defines the term liberally and takes a case-by-case approach, examining the specific circumstances at hand.  Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532 (10th Cir. 1998).  The employer's actions must be materially adverse to the employee's job status.  Wells v. Colo. Dept. of Transp., 325 F.3d 1205, 1212–13 (10th Cir. 2003).  Adverse employment action is not limited to monetary losses but is extended to indefinable losses and actions that "carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." Annett v. Univ. of Kan., 371 F.3d 1233, 1239 (10th Cir. 2004).  The Tenth Circuit limits adverse employment action based on future employment opportunities "to those cases in which the plaintiff demonstrates a clear, concrete or significant risk to future employment opportunities."  Kennedy v. Gen. Motors Corp., 226 F. Supp. 2d 1257, 1267 (D. Kan. 2002).

1.  Denying Plaintiff Sergeant Mobile Training In Violation Of Title VII and Section 1981

In March of 2018, several acting sergeants attended training on how to use new software for grading reports.  Several times during the spring of 2018, plaintiff had served as acting sergeant, but she was not invited to the training.  Defendant argues that as a matter of law, denying plaintiff Sergeant Mobile Training does not constitute adverse employment action.  Plaintiff argues that denial of training is adverse employment action that affects her future employment prospects because (1) defendant should have included her; and (2) the denial of training must be considered in light of biased disciplinary action against her and discriminatory treatment of African-Americans in general.  Neither argument is directly relevant or persuasive.

Plaintiff presents no evidence that denial of training caused humiliation or harm to her

-16-

future employment or reputation.  Plaintiff presents no evidence that she needed the training for her current job.  Moreover, she did not have permission to use the software, and she could serve as acting sergeant in the future without using it.  Finally, she does not dispute that the training had no effect on her prospect for promotion.  Thus, plaintiff has not created a genuine issue of material fact on this claim and defendant is entitled to summary judgment.  For substantially the same reason, the Court overrules plaintiff's summary judgment motion on this claim.

2.   <u>Reassigning Plaintiff To South Patrol In Violation Of Title VII and Section 1981</u>

In 2017, defendant reassigned plaintiff from West Patrol to a different shift on South Patrol. Officers may be temporarily reassigned for up to 59 days when the department needs additional or substitute employees to perform certain duties.  Plaintiff viewed the reassignment as undesirable because she was not familiar with the area, and plaintiff asserts that defendant knew as much. Defendant did not give plaintiff a reason for the reassignment and she never asked for one, but she believed that it was punishment for reporting that Sergeant Falkner (a white officer) was sleeping on duty.  Defendant seeks summary judgment, arguing that temporarily assigning plaintiff to South Patrol does not constitute adverse employment action.

"Reassignment of job duties is not automatically actionable."  <u>Daniels</u>, 701 F.3d at 635. Whether a reassignment is materially adverse to an employee's job status depends upon the circumstances of the case and "should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances."  <u>Id</u>.  Reassignments consisting of significantly different responsibilities or changes in benefits establish adverse employment action, but this Court "will not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action."  <u>Piercy v. Maketa</u>, 480 F.3d 1192, 1203 (10th Cir. 2007).

Plaintiff presents no evidence that the temporary reassignment affected her job

responsibilities, benefits or compensation.  Even if plaintiff did not like it, "a mere inconvenience" is not sufficient to show adverse employment action.  Plaintiff has not established a genuine issue of material fact which defeats defendant's right to summary judgment on this claim.  For substantially the same reason, the Court overrules plaintiff's summary judgment motion on this claim.

### 3.   Closely Monitoring Plaintiff In Violation Of Title VII and Section 1981

Plaintiff asserts that because of race, defendant monitored her performance more closely. Plaintiff does not cite any specific instances of monitoring.  Rather, she argues that she had a feeling that defendant closely monitored her.  Defendant argues that even if it monitored plaintiff more closely, such monitoring by itself did not rise to the level of adverse employment action.

Evidence of severe harassing or monitoring of an employee can create an adverse employment action.  Tapia v. City of Albuquerque, 170 F. App'x 529, 533 (10th Cir. 2006). Unsupported assertions or subjective belief of discrimination carry no probative weight, however, and are insufficient to preclude the grant of summary judgment.  Id.  Here, plaintiff has not demonstrated a genuine issue of material fact whether defendant's monitoring—by itself— constituted adverse employment action.  She points to no specific instances of monitoring, only a feeling, which is subjective and cannot preclude the grant of summary judgment.  Plaintiff does not provide sufficient evidence to establish a genuine issue of material fact, and defendant is entitled to summary judgment on this claim.  For substantially the same reason, the Court overrules plaintiff's summary judgment motion on this claim.

### 4.   Community Policing Unit Requirements In Violation Of Section 1981

Plaintiff argues that Chief Zeigler maintained a seniority requirement to prevent officers

of color and women from qualifying for the Community Policing Unit.[7] Defendant argues that as to plaintiff, the Community Policing Unit requirements do not constitute adverse employment action.

Plaintiff apparently applied to the Community Policing Unit several times and defendant denied her the promotion because she did not meet the seniority requirement. Because plaintiff has shown a concrete threat to future employment or promotion, she has established a genuine issue of material fact whether the seniority requirement constitutes adverse action for purposes of Section 1981. Neither party is entitled to summary judgment on this claim.

B. Pretext

Defendant assumes that plaintiff's discipline (for three incidents of sleeping on duty and the Major Young incident) constitutes adverse employment action. With regard to these actions, and the Community Policing Unit eligibility standards, it argues that as a matter of law, it had legitimate, non-discriminatory reasons for taking the employment actions which it did.

Plaintiff must show that defendant's stated reasons are pretexts for race discrimination. McDonnell Douglas, 411 U.S. at 804. At this final step of the McDonnell Douglas framework, "the presumption of discrimination created by" plaintiff's "prima facie case 'simply drops out of the picture.'" Swackhammer v. Sprint/United Mgmt. Co., 493 F.3d 1160, 1167 (10th Cir. 2007) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993)). At this stage, plaintiff carries the full burden of persuasion to show that defendant discriminated against her on the illegal basis of race. Id. (citing Bryant v. Farmers Ins. Exch., 432 F.3d 1114, 1125 (10th Cir. 2005)).

---

[7]     The record seems clear that plaintiff satisfies the personnel evaluation requirement for the Community Policing Unit, and that defendant has not denied her a position in that unit because of inadequate performance ratings. Accordingly, the Court construes her claim as a challenge to only the seniority requirement.

Plaintiff may show "pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons."  Id. (quotation omitted).  A common method by which plaintiff may show pretext—and the method on which plaintiff relies in this case—is disparate treatment.  Id.

Under this approach, plaintiff establishes pretext by demonstrating that defendant treated her differently from comparable employees.  Id. at 1167-68.  To be a valid comparator, other employees must be similarly situated to plaintiff in all material respects and have violated work rules of comparable seriousness.  Id. at 1167; Lucero v. Sandia Corp., 495 F. App'x 903, 909 (10th Cir. 2012); Macon v. U.P.S., Inc., 743 F.3d 708, 717 (10th Cir. 2014).  In addition, a comparator must have: (1) "deal[t] with the same supervisor," and (2) been "subject to the same standards governing performance evaluation and discipline."  Aramburu v. Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997).  The Court also compares the relevant employment circumstances that are applicable to plaintiff, such as work history and company policies, and the intended comparable employees.  Id.  Whether employees are similarly situated is a fact-intensive inquiry, and what facts are material varies depending on the case.  Lucero, 495 F. App'x at 909.

Disparate treatment does not create an inference of discrimination if defendant's differential treatment of similarly-situated employees is trivial or accidental or explained by a nondiscriminatory motive.  Swackhammer, 493 F.3d at 1168 (citing Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1232 (10th Cir. 2000)); EEOC v. Flasher Co., 986 F.2d 1312, 1321 (10th Cir. 1992) (inference of illegal discrimination not legally compelled by irrational or accidental disparate treatment between minority and non-minority employees).  "[T]he existence

-20-

of differential treatment[ ] defeats summary judgment only if it could reasonably lead the trier of fact to infer a discriminatory motive; where the evidence of pretext supports only nondiscriminatory motives, such an inference is logically precluded and summary judgment for the employer is appropriate." Swackhammer, 493 F.3d at 1168.

        1.   Sleeping Incidents

As to the first sleeping incident, defendant argues that it suspended plaintiff for one day and issued 25 disciplinary points because the rules and regulations specify 25 disciplinary points and, including this incident, she had accumulated more than 40 disciplinary points in a one-year period. As to the second sleeping incident, defendant states it suspended plaintiff for two days, issued 50 disciplinary points and suspended plaintiff's approval for off-duty employment for six months because department policy provided a system of progressive discipline and plaintiff had two violations in the last year. As to the third incident, defendant states that it suspended plaintiff for four days and prohibited her from working off duty for 12 months because it had disciplined her on two prior occasions for sleeping on duty and discipline for the third incident was warranted under the department's progressive discipline policy.

Plaintiff asserts that as a matter of law, her statistical evidence establishes pretext. Taking the opposing view, defendant argues that as a matter of law, statistical data alone is insufficient to show pretext. Statistical data displaying an employer's pattern of discrimination toward a protected class may create an inference that an employer discriminated against an individual member of the class. Timmerman v. U.S. Bank, N.A., 483 F.3d 1106, 1114 (10th Cir. 2007). Generally, however, statistics alone are not probative of discrimination and they are rarely sufficient to show pretext. Id. at 1114–15. Statistics are refutable and depend on the surrounding circumstances. Int'l Bhd. Of Teamsters v. United States, 431 U.S. 324, 340 (1977). The statistical

data must show a significant disparity and eliminate nondiscriminatory explanations for the disparity.  Fallis v. Kerr-McGee Corp., 944 F.2d 743, 746 (10th Cir. 1991); see McDonnell Douglas, 411 U.S. at 805 (statistics showing prolonged and marked imbalance may not be controlling in individual discrimination case where legitimate reason for employer's action is present).  Thus, plaintiff must show disparate treatment between comparable individuals. Timmerman, 483 F.3d at 1115.

Plaintiff argues that for sleeping on duty, defendant disciplined her and other African-American officers more severely than non-African-American officers.  Defendant responds that (1) the raw data does not support an inference that it disciplines African-American officers more harshly than non-African-American officers; (2) the small number of officers whom defendant disciplined for sleeping on duty does not provide a basis for concluding that it disciplined African-American officers more severely; (3) plaintiff did not establish a nexus between the statistics and her discipline; (4) defendant issued more than 30 suspension days to just four officers, which accounted for 130 of the 198 suspension days issued to African-American officers and (5) the range of discipline which it issued to African-American officers was within the range of that issued to Caucasian officers, which shows that it had no pattern of disparate treatment.

Plaintiff looks to past instances of sleeping on duty and the discipline which white officers received.  Of the eight instances in which defendant disciplined officers for sleeping on the job, six of the officers were African-American.  Further, a white officer, Sergeant Falkner, received 25 points for sleeping on the job, while plaintiff received days of suspension.  Defendant argues plaintiff cannot eliminate nondiscriminatory reasons for the discipline because she received days of suspension due to her two prior incidents of sleeping on duty.  See Timmerman, 483 F.3d at

1121 (to show pretext based on differential treatment, plaintiff must rule out nondiscriminatory reasons).

Although plaintiff admits sleeping on duty on all three occasions, defendant's disciplinary action for major violations is discretionary.  Chief Zeigler was the final decision-maker for the eight instances of sleeping on duty, and his discipline of African-American officers is significantly higher than the percentage of the work force that is African-American (75 per cent compared to 10 per cent).  Fallis v. Kerr-McGee Corp., 944 F.2d 743, 746 (10th Cir. 1991) (statistical data showing  employer's pattern of conduct toward protected class can create inference that employer discriminated against individual members of class).  Defendant may have an innocent explanation for this disparity, and plaintiff has not conclusively shown otherwise.  By the same token, plaintiff has raised a genuine issue of material fact whether defendant's stated reasons for her discipline for sleeping incidents were a pretext for discrimination.

Plaintiff raises a genuine issue of material fact whether defendant's stated reasons for the discipline that she received for the three sleeping incidents was a pretext for discrimination.  Thus, defendant is not entitled to summary judgment on this claim.  On the other hand, based on defendant's evidence of its progressive discipline policy and its argument that the statistics are not probative of whether it disciplined plaintiff based on race, a reasonable jury could find in favor of defendant on this issue.  The Court therefore overrules plaintiff's motion for partial summary judgment.

### 2.   Major Young Incident

Defendant states that it issued plaintiff a two-day suspension for the Major Young incident because she ran a red light and exceeded the speed limit without activating her emergency equipment in violation of KCKPD rules and regulations, and that it issued her an additional one-

day suspension for filing her complaint with the wrong department.  Plaintiff admits that she violated the rules and regulations by speeding and running a red light without activating her emergency equipment, but she argues that defendant administered discipline in a racially disparate manner because she and her partner jointly decided to run the red light and speed, and the defendant did not discipline her partner. [8]  Defendant argues that plaintiff's partner is not a valid comparator because he was not operating the vehicle when the traffic infraction occurred, and its general practice does not include disciplining a passenger for a traffic violation.

Arguably, because plaintiff and her partner decided to violate the same rule together, their violations are of comparable seriousness.  Further, Chief Zeigler reviewed the alleged violation committed by both individuals.  Plaintiff and her partner are subject to the same KCKPD rules and regulations, but after review, Chief Zeigler only disciplined plaintiff.  Plaintiff raises a genuine issue of material fact whether defendant's stated reasons for that discipline was a pretext for discrimination.  Defendant is not entitled to summary judgment on this claim.  On the other hand, based on defendant's evidence of its disciplinary policy for rule violations, a reasonable jury could find in favor of defendant on this issue.  The Court therefore overrules plaintiff's motion for partial summary judgment on this issue.

---

[8]     Plaintiff also argues that the reasons were pretextual because in 2008, a former police chief disciplined two African-American officers, a driver and a passenger, for a pursuit violation.  Plaintiff compares this incident, where the passenger was a white officer, and the 2008 incident, where the passenger was African-American, to show disparate treatment.  Defendant argues that the 2008 incident is distinguishable because Chief Zeigler was not chief of police in 2008 and the incidents involved different violations.

To establish pretext, a comparable individual need only violate a rule of "comparable seriousness."  Here, a pursuit violation and a traffic infraction are rules of comparable seriousness.  The fact that a different police chief issued the discipline in 2008 is only one factor in evaluating whether plaintiff and her passenger are comparably situated to the driver and passenger in the 2008 incident.

### 3.   Community Policing Unit Requirements

Defendant argues it maintained the seniority requirement for the Community Policing Unit because it wanted to ensure that good performers staffed its specialized units.  Plaintiff argues that defendant imposed a seniority requirement to exclude African-American officers from the specialized units.

Plaintiff failed to provide evidence that defendant's stated reasons for maintaining the seniority requirement were pretextual.  The seniority requirement applies to all officers, regardless of race, and plaintiff has not provided evidence that in applying the seniority requirement, defendant has treated her differently from comparable employees.  Thus, defendant is entitled to summary judgment on this claim.  For substantially the same reason, the Court therefore overrules plaintiff's motion for partial summary judgment.

## III.    Hostile Work Environment Under Title VII and Section 1981

Plaintiff asserts that defendant subjected her to a racially hostile work environment. Defendant argues that it is entitled to summary judgment because plaintiff cannot establish a prima facie case.

To establish a prima facie case of hostile work environment, plaintiff must demonstrate that based on the totality of the circumstances, (1) she is a member of a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was racial or stemmed from racial animus and (4) the harassment was pervasive or severe enough to alter the terms, conditions or privilege of employment.   Harsco Corp. v. Renner, 475 F.3d 1179, 1186 (10th Cir. 2007). Defendant argues that it is entitled to summary judgment because plaintiff cannot show that the harassment was racial or stemmed from racial animus, or that it was pervasive or severe enough to alter the terms, conditions or privilege of her employment.

A.  Whether Harassment Was Racial Or Stemmed From Racial Animus

Defendant argues that as a matter of law, plaintiff has not shown that any hostile environment stemmed from racial animus.  Plaintiff argues that disciplinary action against her, combined with a general practice of racially discriminatory discipline toward African-Americans throughout Chief Zeigler's time as chief of police, created a hostile work environment.  Specifically, plaintiff cites her discipline for the sleeping incidents and Major Young incident, her reassignment to South Patrol, the change in community policing units and close monitoring of her performance.  Further, she argues that other officers made racially offensive comments during roll call.

Plaintiff has raised a genuine issue of material fact whether defendant subjected her to a hostile working environment that was based on race or racial animus.  Plaintiff cites statistical evidence that throughout Chief Zeigler's tenure as chief of police, he discriminated against African-American officers in issuing discipline.  Further, she provides evidence that defendant disciplined her white partner less severely for the same rule violation during the Major Young incident and that defendant disciplines African-Americans significantly more frequently for sleeping on duty.  As a member of a protected class subject to disproportionate discipline, plaintiff raises a genuine issue of material fact whether defendant subjected her to a hostile work environment based on race or racial animus.  Therefore, defendant is not entitled to summary judgment.

B.  Harassment That Was Pervasive and Severe

Defendant also seeks summary judgment on the ground that plaintiff has not shown harassment pervasive or severe enough to alter the terms of her employment.  Plaintiff argues that the statistical evidence displays racial discrimination which permeates the police department. A

showing of pervasiveness requires "more than a few isolated incidents of racial enmity." Bolden v. PRC Inc., 43 F.3d 545, 551 (10th Cir. 1994) (citations and internal quotations omitted). Plaintiff must show a "steady barrage of opprobrious racial comments" and produce evidence that the workplace was permeated with discriminatory intimidation, ridicule and insult sufficiently severe or pervasive as to alter the conditions of his employment and create an abusive working environment. Bolden, 43 F.3d at 551 (citation omitted); Bloomer v. U.P.S., Inc., 94 F. App'x 820, 825 (10th Cir. 2004) (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)). Finally, the work environment must be both subjectively and objectively hostile or abusive. Lounds v. Lincare, Inc., 812 F.3d 1208, 1222 (10th Cir. 2015).

Plaintiff argues that over 19 months, her discipline on four occasions, reassignment to South Patrol, the qualifications for positions in the Community Policing Units and the comments made during roll call were sufficiently severe or pervasive to alter the terms and conditions of her employment. Viewed in the context of the statistical evidence which shows that African-Americans receive a disproportionate amount of discipline, plaintiff has created a genuine issue of material fact whether racial hostility in her work environment was pervasive and severe enough to constitute a hostile work environment. See Lounds v. Lincare, Inc., 812 F.2d 1208, 1222 (10th Cir. 2015) ("It is important to recognize that 'the severity and pervasiveness evaluation is particularly unsuited for summary judgment' because it is inherently fact-found by nature."). The Major Young incident and the sleeping incidents, the reassignment to South Patrol, the qualifications for positions in Community Policing Units and the comments made during roll call all occurred within a 19 month period, causing plaintiff to feel that defendant discriminated against her. Meanwhile, plaintiff was observing a general pattern of disparate treatment toward African-American officers, as evidenced by statistical data. Plaintiff has presented evidence which creates

-27-

a genuine issue of material fact whether her workplace was an abusive working environment that was permeated with discriminatory intimidation, ridicule and insult sufficiently severe or pervasive as to alter the conditions of her employment.  Accordingly, defendant is not entitled to summary judgment on plaintiff's hostile work environment claim.

**IT IS THERFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc. #44) filed March 24, 2021 is **SUSTAINED in part**.  Based on plaintiff's failure to exhaust administrative remedies, the Court grants defendant's motion for summary judgment on plaintiff's Title VII claims based on the first and second sleeping incidents, the Community Policing Unit requirements and the Major Young incident.  Because plaintiff has not established a genuine issue of material fact with regard to adverse employment action, the Court grants defendant's motion for summary judgment on the denial of Sergeant Mobile Training, reassignment to South Patrol and close monitoring under both Title VII and Section 1981.  Because plaintiff has not raised a genuine issue of material fact as to pretext, the Court grants defendant's motion for summary judgment as to the Community Policing Unit requirements under Section 1981.

Because plaintiff has raised a genuine issue of material fact as to pretext, the Court overrules defendant's motion for summary judgment on (1) the first and second sleeping incidents under Section 1981, (2) the third sleeping incident under Title VII and Section 1981 and (3) the Major Young incident under Section 1981.  The Court also overrules defendant's motion for summary judgment on plaintiff's hostile work environment claim.

**IT IS FURTHER ORDERED** that Plaintiff's Motion For Partial Summary Judgment (Doc. #40) filed March 10, 2021 is **OVERRULED.**

The following claims remain in the case: (1) that defendant discriminated against plaintiff on the basis of race, in violation of Section 1981, by disciplining her for three separate sleeping

incidents and the Major Young incident; (2) that defendant discriminated against her on the basis of race in violation of Title VII, by disciplining her for the third sleeping incident; and (3) that defendant subjected her to a racially hostile work environment in violation of Section 1981 and Title VII.

Dated this 24th day of September, 2021 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge